**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 4:16-CR-00173-MAC-CAN |
| | § | |
| WILLIAM CRAIG WHISMAN | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant William Craig Whisman's Motion to Suppress ("Defendant's Motion to Suppress") [Dkt. 40]. On December 5, 2017, the undersigned conducted an evidentiary hearing and heard oral argument from both the Government and Defendant on the pending Motion to Suppress. After considering the Motion, all relevant filings and evidence, as well as the oral argument of counsel presented at hearing, the Court recommends that Defendant's Motion to Suppress [Dkt. 40] be **DENIED**.

## BACKGROUND

### I.    THE INDICTMENT

On December 16, 2016, Defendant was indicted for a violation of 18 U.S.C. § 2422(b) (Attempted Coercion and Enticement of a Minor) and a violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography) [Dkt. 10]. The Indictment was superseded on December 13, 2017, subsequent to the hearing on Defendant's Motion to Suppress; the Superseding Indictment charges Defendant in four counts with: a violation of 18 U.S.C § 2422(b) (Attempted Coercion and Enticement of a Minor), a violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography), a violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (Receipt of Child Pornography), and lastly a violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (Distribution of Child Pornography) [Dkt. 66].

In pertinent part, Count One charges that Defendant "did use any facility of interstate and foreign commerce, to knowingly persuade, induce, entice, and coerce, and to knowingly attempt to persuade, induce, entice, and coerce, any individual who had not attained the age of 18 years to engage in any sexual activity for which any person could be charged with an offense" [Dkt. 66]. Count Two charges that Defendant "did knowingly possess material, namely, an Apple Mac A1297 laptop computer . . . that contained images of child pornography . . . involving a prepubescent minor and a minor who had not attained 12 years of age" [Dkt. 66]. Counts One and Two in the Superseding Indictment are identical to those charged in the earlier Indictment [*see* Dkts. 10; 66]. Counts Three and Four charge that Defendant "did knowingly receive any child pornography . . . . using a social media messaging platform, the Internet, and an iPhone 6S cellular phone" and that Defendant "did knowingly distribute any child pornography . . . . using a social media messaging platform, the Internet, and an iPhone 6S cellular phone" [Dkt. 66].

## II.   THE MOTION TO SUPPRESS

At issue herein are two warrants: (1) the Vehicle Search Warrant executed on November 15, 2016, which authorized the search of Defendant's vehicle; and (2) the Residential Search Warrant executed on November 17, 2016, which authorized the search of Defendant's residence. On September 12, 2017, Defendant filed the instant Motion to Suppress [Dkt. 40], seeking to suppress "the contents of any electronic storage devices seized from [Defendant's person or vehicle] on [November 15, 2016], and all items seized from Defendant's residential property located at 4800 Wisteria Drive, Frisco, Texas on November 17, 2016" [Dkt. 40 at 1].[1]

---

[1] At Hearing, Defendant clarified that with respect to the Vehicle Search Warrant, he seeks to suppress only the search and seizure of the 32 GB green and white Lexar flash drive; 46 GB Lexar flash drive; 86 GB my ATT flash drive; 256 GB PNY flash drive; children's panties in a bag; and HP Invent laptop and cord [Dkts. 59, Ex. 5; 65 at 47-48]. Defendant does not seek to suppress: the iPhone S, pink unicorn stuffed animal, Walmart receipt for the stuffed animal, two Trojan condoms, and a power bank [Dkt. 59, Ex. 5].

Defendant's Motion argues both that probable cause does not exist and that the good faith exception cannot not apply to the seizure of any digital items in connection with the Vehicle Search Warrant, other than Defendant's iPhone [Dkt. 40 at 6]. Defendant's argument is premised on his assertion that at the time of the Vehicle Search Warrant, the FBI had communicated with and was searching for evidence related only to Defendant's alleged attempted coercion and enticement of a minor, not any crimes or charges related to child pornography. As such, Defendant posits no cause existed to seize any items (namely, the flash drives, external hard drives, and HP laptop) besides Defendant's iPhone which Defendant argues was the only device law enforcement suspected Defendant was using to communicate with them [Dkt. 40 at 6]. Defendant further argues that the Vehicle Search Warrant did not permit Agent Covey, once any electronic storage devices were seized, to search the contents of those electronic storage devices; Defendant asserts a further warrant to search the contents should have been secured [Dkt. 40 at 3].

As to the Residential Search Warrant, Defendant argues there was no evidence presented that the search would result in evidence of child pornography because no information existed that any illegal activity had been conducted at the residence. Defendant further argued that the females depicted in the videos and referenced in the warrant were incorrectly alleged to be minors and thus the videos do not constitute child pornography. At Hearing, Defendant additionally argued as to both warrants that even if certain of the images referenced did depict minors, the images constitute only child erotica (not pornography) [Dkts. 63 at 2, 5; 65 at 83-84].

The Government's Response to the Motion to Suppress was filed on September 26, 2017 [Dkt. 50]. After several continuances necessitated by Defendant's ongoing competency evaluation, the Court conducted an evidentiary hearing on December 5, 2017. At Hearing, the

Government put on FBI Special Agent Aaron Covey and admitted five exhibits.[2]  Defendant called

no witnesses and admitted no exhibits at Hearing.  Defendant filed supplemental briefing on

December 11, 2017 [Dkt. 63].[3]  The Government filed a response to Defendant's supplemental

brief on December 15, 2017 [Dkt. 70].  The Hearing transcript was filed on December 12, 2017

[Dkt. 65].  The underlying facts relevant to Defendant's Motion to Suppress are summarized as set

forth below.

## III.   THE CRAIGSLIST ADVERTISEMENT

Agent Covey, currently assigned to the Child Exploitation Task Force, testified that on

November 9, 2016, he placed an advertisement on Craigslist.com under the heading "Play Dates"

that stated: "Family fun and forbidden fruit (tabooooo) Sound like fun? Yng dad looking for dads

or moms for some play dates for dau." [Dkts. 65 at 15-16; 59, Ex. 2 at 14-15].  The advertisement

invited persons to contact the author via Kik messenger.  Agent Covey testified that, on the same

day the advertisement was placed, he received a response from an individual who identified

himself as "John Smith."  "John Smith" was later determined to be the Defendant herein.

Agent Covey thereafter communicated with Defendant through Kik messenger and email.

Notable herein, Agent Covey testified that Kik messenger is "an instant messaging program

where someone can use a phone, a tablet, or computer through emulation software to conduct

---

[2] Government's Exhibit One is the search warrant for Defendant's 2009 Chevrolet HHR [Dkt. 59, Ex. 1]. Government's Exhibit Two is the application for search warrant for Defendant's 2009 Chevrolet HHR [Dkt. 59, Ex. 2]. Government's Exhibit Three is the search warrant for Defendant's residence at 4800 Wisteria Drive in Frisco, Texas [Dkt. 59, Ex. 3]. Government's Exhibit Four is the application for search warrant for Defendant's residence at 4800 Wisteria Drive in Frisco, Texas [Dkt. 59, Ex. 4].  Government's Exhibit Five is a return marking the items Defendant contests concerning the search of the HHR [Dkt. 59, Ex. 5].

[3] The supplemental briefing submitted, per agreement at the Hearing, was to be limited to five (5) pages and to be related to a single legal issue, being the search of the electronic storage devices subsequent to their seizure in connection with the Vehicle Search Warrant.  Defendant's supplemental brief does not meet these requirements; it both exceeds the page limitation and addresses additional issues beyond those agreed upon.  Notwithstanding, the Court has considered Defendant's supplemental briefing herein.

instant messaging between two people that have the same software" [Dkt. 65 at 16].[4]  More specifically, Kik messenger is an application that can be downloaded from "the App store or from the Google Play store" and then used on a cell phone, Kindle Fire, iPad, computer, or other digital device to engage in instant messaging [Dkt. 65 at 16-18].  No testimony or evidence was presented controverting Agent Covey's testimony that Kik messenger could be used from multiple devices at any given time.  Kik messenger has "been known [by law enforcement] to be used by [individuals] who are engaged in [child exploitation]" [Dkt. 65 at 49].

In the messages exchanged via Kik, Agent Covey represented himself to be the father of a ten-year-old girl named Carley;[5] Defendant expressed interest in having sexual intercourse with the fictitious ten-year-old girl [Dkts. 65 at 16, 22; 59, Ex. 2 at 15].  Throughout their communications, Agent Covey received numerous messages from "John Smith" that were graphic and sexual in nature, and focused on Defendant's interest in having intercourse with "Carley" and requesting opportunities to meet the child for sex [Dkts. 65 at 22; 59, Ex. 2].  The messages exchanged further relayed that Defendant was a 50-year-old male in Frisco, TX, who worked at an office building located at "DNT and [L]egacy," and drove a black Chevrolet HHR [Dkt. 59, Ex. 2 at 16].  Agent Covey also attested that Defendant, purportedly in an effort to prove he was not law enforcement, "sent … via Kik, a photograph of a nude female child, who appeared to be standing on a beach" [Dkt. 59, Ex. 2 at 16].  Agent Covey testified the image showed the female child's entire body [Dkt. 65 at 28, 52].

---

[4] "Kik is a free app available on most mobile platforms and 'allows people to find strangers and communicate with them anonymously, through a user name.'  Kik has approximately 275 million registered users worldwide.  The app asks for the user's real name and email address, but does not require the user to provide a telephone number and works even if the information provided is false." *United States v. Jauron*, 832 F.3d 859, 862 n. 3 (8th Cir. 2016) (quoting Sheryl Gay Stolberg & Richard Perez–Pena, *App Provides Anonymity to Teenagers, and to Predators, Too,* N.Y. Times Feb. 5, 2016, at A1, 3).

[5] Carley's name appears both as "Carley" and "Carly" throughout the record.  Hereinafter, the Court refers to the fictitious ten-year-old female as Carley.

## IV. THE TRAFFIC STOP

Agent Covey testified that he and Defendant made plans, over both Kik and email, to meet for the purpose of allowing Defendant to have sex with the child on November 10, 2016 [Dkt. 65 at 22-23]. Agent Covey attested that Defendant sent him, during such exchange, a photo of his vehicle so that Defendant could be identified at the meet. Defendant arrived at the scheduled time and location (a restaurant parking lot) [Dkts. 65 at 23; 59 Ex. 2 at 19-21]. Agent Covey attested that, upon arriving, Defendant was concerned about the meeting location because it was crowded and too bright and requested the location of the meet be changed to a nearby business parking lot. Officers observed Defendant's vehicle leave the restaurant parking lot [Dkt. 59, Ex. 2 at 22-23]. Thereafter, Agent Covey cancelled the meeting, [Dkt. 59, Ex. 2 at 22]. Officers then observed Defendant's vehicle return to the restaurant parking lot and Defendant entered the restaurant [Dkt. 59, Ex. 2 at 22].

Defendant later returned to his vehicle and exited the parking lot. At such time, a Plano Police Office conducted a traffic stop of Defendant's vehicle [Dkt. 65 at 22-23]. Defendant was identified as the driver and sole occupant of the vehicle [Dkt. 59, Ex. 2 at 22-23]. Agent Covey testified that during the stop the officer saw a "cellular telephone in the front seat that appeared to be active, or getting messages at the time she was talking to him, as well as stuffed animals in his front seat," including specifically a pink unicorn stuffed animal and a bear stuffed animal [Dkt. 65 at 23]. Agent Covey testified that he continued to communicate with Defendant during the traffic stop [Dkt. 65 at 23]. Agent Covey testified that the officer conducting the stop did not see a laptop or a tablet in the vehicle [Dkt. 65 at 52]. Officers were able to confirm during the stop, and upon subsequent surveillance, that Defendant's address was 4800 Wisteria Dr., Frisco, Texas 75035.

After the traffic stop, Agent Covey attested that his conversations with Defendant continued, and included chats, indicative of Defendant's continued sexual interest in the child. By way of example, Defendant asked for a picture of Carley [Dkt. 59, Ex. 2 at 25], and then transmitted a video of "what appeared to be an adult male masturbating" and saying Carley's name [Dkt. 59, Ex. 2 at 25].

## V. THE VEHICLE SEARCH WARRANT

Agent Covey and Defendant rescheduled the meet-up for November 15, 2016 [Dkt. 59, Ex. 2 at 26-27]. Relevant herein, Defendant requested additional pictures of Carley (specifically, pictures of Carley and her father engaged in sexual activity). Agent Covey, in response to such request, advised Defendant he could bring an external hard drive or large thumb drive to the meet-up [Dkt. 59, Ex. at 26]. Defendant also inquired whether he could bring a small video camera to record his encounter with Carley [Dkts. 59, Ex. 2 at 26; 65 at 27]. In addition to those items, it was also discussed that Defendant would bring condoms and a gift for the child [Dkt. 65 at 54].

The Vehicle Affidavit, prepared by Agent Covey, generally describes Agent Covey's credentials, his experience with the use of computers, digital media, and specifically, the Kik messenger software in the exploitation of children, and outlines the background investigation of Defendant's alleged attempted coercion of a child via the Kik messenger [Dkt. 59, Ex. 1]. Agent Covey included in the Affidavit excerpts of the transcript of his communications with Defendant detailing Defendant's desire to have sex with Carley and their plans to meet as discussed more fully above. Agent Covey requested to seize the following items: (1) items brought as presents for or intended to be used by a child, including, but not limited to toys, stuffed animals, children's clothes, games; (2) items indicative of sexual activity, including condoms, lubricant, or

other prophylactics; (3) any cameras, film, videotape, and all photographic devices capable of being used to capture and store images; (4) electronic devices, including computer(s), mobile/smart phones, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to communicate with or about the sexual exploitation of children; (5) records evidencing ownership or possession of Defendant's vehicle, including, but not limited to, the vehicle title, insurance cards or statements, repair or service receipts, and lease or purchase documents; (6) records evidencing ownership of the items contained in Defendant's vehicle and specifically any documents or records establishing the ownership or possession of electronic devices, including any mobile/smart phones; (7) any and all notes, documents, records, computer files or correspondence, in any format and medium pertaining to the enticement, coercion, or sexual exploitation of minors, including communications between individuals about grooming children, engaging in sexually explicit conduct with children, or the existence of sites on the Internet that cater to those with an interest in child exploitation [Dkt. 59, Ex. 2 at 35-36]. The Affidavit also specifically details the "search procedure of electronic data contained in digital devices," that would be used in connection with any digital devices seized. [Dkt. 59, Ex. 2 at 29-30]. Magistrate Judge Kimberly Priest Johnson signed the Vehicle Search Warrant on November 15, 2016 [Dkt. 59, Ex. 1].

Agent Covey testified that on the evening of November 15, 2016, Defendant was observed exiting his vehicle at the pre-arranged meeting location and time; Defendant confirmed that he was "John Smith," was carrying a stuffed pink unicorn and had condoms on his person, and allowed Agent Covey to view his iPhone and the Kik application that they communicated through [Dkt. 65 at 29-30, 42, 67-68]. Agent Covey and other officers subsequently executed the Vehicle

Search Warrant, and seized certain items, including: one iPhone S, one 32 GB green and white Lexar flash drive, a pink unicorn stuffed animal, one 46 GB Lexar flash drive, one 86 GB my ATT flash drive, one Walmart receipt for stuffed animal, two Trojan condoms, one power bank, one 256 GB PNY flash drive (hereinafter, the "PNY thumb drive"), children's panties in a bag, and one HP Invent laptop and cord [Dkt. 59, Ex. 5].

## VI.    THE PNY THUMB DRIVE

After the execution of the Vehicle Search Warrant, Agent Covey and other members of his task force searched Defendant's PNY thumb drive [Dkt. 65 at 35]. Agent Covey testified that forensic examination showed that the PNY thumb drive had connected with a Mac laptop, and Defendant's wife advised that Defendant exclusively used a Mac computer (as discussed more fully *infra*) [Dkt. 65 at 39-40]. Agent Covey testified that he personally viewed several videos and/or images from the thumb drive, including images from a hidden camera of what appeared to be two young, teenaged girls, a blonde Caucasian and a brunette Asian [Dkt. 65 at 37]. Agent Covey testified that the Asian girl is seen fully nude, "adjust[ing] her genitals," and "display[ing] her genitals . . . to the camera" in a full frontal view [Dkt. 65 at 70].

Agent Covey testified, based on his years of experience in examining child pornography and generally observing female family members mature from infancy to adulthood, that he believed both girls to be about sixteen years old; moreover he was aware that Defendant had a daughter, who would have been sixteen years old on the date of the time stamp on the video(s) [Dkt. 65 at 37-39]. Agent Covey testified that at the time of his review and at the time of applying for the Residential Search Warrant, based on his years of experience in viewing and investigating child pornography, he believed these images to depict child pornography [Dkt. 65 at 46].[6]

---

[6] Agent Covey attested in the Residential Affidavit that the entirety of the information contained in the Affidavit was true and correct, and that these images depicted child pornography [Dkt. 59, Ex. 4].

## VII.  THE RESIDENTIAL SEARCH WARRANT

The Residential Affidavit, prepared by Agent Covey, again generally describes Agent Covey's credentials, his experience with the use of computers, digital media, and the Internet in child pornography cases, and outlines the background investigation of Defendant's communication with Agent Covey via Kik messenger, Defendant's arrest, and the images and videos stored on items seized from Defendant's vehicle [Dkt. 59, Ex. 4]. Agent Covey specifically attested that after Defendant's arrest on November 15, 2016, he and other officers went to Defendant's residence and spoke with Defendant's wife; she revealed that Defendant "primarily used an Apple Mac laptop computer at home" and "declined agents' requests to view or otherwise access the Mac laptop computer" [Dkt. 59, Ex. 4 at 65].  In the Affidavit, Agent Covey further attested that on November 16, 2016, "FBI computer scientists conducted a forensic review of the PNY thumb drive, pursuant to a search warrant issued by United States Magistrate Judge Kimberly C. Priest Johnson . . . which authorized the search of [Defendant's vehicle], as well as it's [sic] driver and any electronic devices located therein" [Dkt. 59, Ex. 4 at 65].  Agent Covey attested that "[r]eview of the thumb drives revealed that the device had previously been connected to a Mac computer," which was "consistent with [Defendant's wife's] statement that her husband. . . primarily used a Mac laptop computer at home" [Dkt. 59, Ex. 4 at 65].  Agent Covey attested that the PNY thumb drive videos showed footage from what appeared to be a "small, hidden camera," which was consistent with Defendant's earlier communication where he mentioned that "he has 'a really small video camera' that he considered bringing to meet the 10-

year-old child on November 15, 2016" [Dkt. 59, Ex. 4 at 65-66]. Agent Covey also attested in the Affidavit that the videos saved on the PNY thumb drive depicted child pornography.[7]

Magistrate Judge Kimberly Priest Johnson issued the Residential Search Warrant on November 17, 2016 [Dkt. 59, Ex. 3]. Agent Covey provided a return as follows: one Gateway laptop, one Sony handycam DCR-SR88, one Sony handycam DCR-SR2, one My Passport ultra-external hard drive, eight CDs, one iPhone Black/Silver model A1453, one Sony video camera, four thumb drives, one flash drive, one Maxell 8mm cassette, one WD external hard drive, two silicon sex toys, and one Macbook laptop [Cause No. 4:16-mj-458, Dkt. 3].

## ANALYSIS

To reiterate, Defendant's argument as to the Vehicle Search Warrant is two pronged: first, that all evidence other than Defendant's iPhone seized in connection with the Vehicle Search Warrant should be suppressed because Agent Covey's application was directed or targeted only at locating evidence for Defendant's alleged attempted coercion and enticement of a minor, not any charge related to child pornography [Dkt. 40 at 6]; and second, that even if valid, the Vehicle Search Warrant did not permit Agent Covey to search the contents of Defendant's electronic

---

[7] Agent Covey detailed the video footage of the two females in the bathroom hidden camera footage. He attested that the first video has a time stamp of "2013.05.16," and in the video, both girls are shown; the Asian female, later alone in the bathroom, "undresses, exposing her vagina to the mirror and the camera," and then she "stands completely nude in front of a mirror" [Dkt. 59, Ex. 4 at 66]. Agent Covey attested that the second video has a time stamp of "2013.05.15" and depicts "the same pubescent Asian female . . . .completely nude" [Dkt. 59, Ex. 4 at 66]. He attested that the third video has a time stamp of "2013.05.17" and depicts "the Asian female …. clearly exposing her genitals to the camera . . . . exposing her breasts" [Dkt. 59, Ex. 4 at 67]. Agent Covey attested that the fourth video has a time stamp of "2013.05.19" and depicts "the same Asian pubescent female . . . . exposing her breasts and genitals to the camera" [Dkt. 59, Ex. 4 at 67]. Agent Covey attested that the blonde female is Defendant's relative, who at the date of the time stamp on the video was sixteen years old, and "[t]he pubescent Asian female appears to be a friend of [Defendant's relative]" [Dkt. 59, Ex. 4 at 68]. Agent Covey testified that it was not until he spoke with Defendant's wife after the execution of the Residential Search Warrant that she clarified that the two girls depicted in the video discovered on the PNY thumb drive were adults at the time the video was taken [Dkt. 65 at 72]. Agent Covey confirmed that the information contained in his Affidavits was true and correct to the best of his knowledge at the time of presenting the Affidavits, that he had made no false statements or material omissions to the Magistrate Judge and did not learn that the females depicted were not minors until after the Residential Search Warrant had been and/or was in the process of being executed [Dkt. 65 at 71-72].

storage devices [Dkt. 40 at 3]. Regarding the Residential Search Warrant, Defendant argues that the Residential Search Warrant fails to demonstrate that a search of the residence would result in evidence of child pornography because no information existed that any illegal activity had occurred at the residence and Agent Covey incorrectly attested that the videos depicted minors [Dkt. 40 at 6]. Defendant also argues certain of the images referenced in the warrants did not constitute child pornography (but rather child erotica) [Dkts. 63 at 2, 5; 65 at 83-84].

## I. THE FOURTH AMENDMENT FRAMEWORK AND THE SUPPRESSION REMEDY

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The exclusionary rule, which permits criminal defendants to seek exclusion (suppression) of evidence obtained through "illegal search and seizure[,]" provides one vehicle through which citizens may "effectuate [this] Fourth Amendment right . . . ." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (noting that this rule "applies as well to the fruits of the illegally seized evidence"). The U.S. Supreme Court has characterized exclusion through suppression for decades as an "extreme sanction" that courts should apply only sparingly. *United States v. Leon*, 468 U.S. 897, 926 (1984); *see also Herring v. United States*, 555 U.S. 135, 141 (2009) (warning that application of the exclusionary rule exacts "substantial social costs") (citations and internal quotations omitted); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse.").

When considering the validity of a search warrant, a court must engage in a two-part inquiry: (1) it generally must ask first whether the good faith exception to the exclusionary rule applies (and, in turn, whether any of the exceptions to that rule applies) and then, (2) whether probable cause supports the warrant in question. *Leon*, 468 U.S. at 924. Courts generally consider

whether probable cause supports the warrant only in the absence of good faith.  *See Stalnaker*, 571 F.3d at 436; *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter.").

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *Leon*, 468 U.S. 897).[8]  Normally, the issuance of a warrant by a magistrate suffices to establish an officer's good faith. *United States v. Pena-Rodriquez*, 110 F.3d 1120, 1130 (5th Cir. 1997).  But good faith cannot be established if one of the following four circumstances is present:

> (1) [i]f the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Payne*, 341 F.3d at 399–400 (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n. 4 (5th Cir. 1992)) (hereinafter, the *Leon* exceptions").  Defendant makes arguments herein that implicate the first and third of these *Leon* exceptions.[9]

---

[8]  In considering whether the good-faith exception applies, the Court does not attempt to determine the officers' subjective belief regarding the validity of the warrant.  *See Leon*, 468 U.S. at 922 n. 23.

[9]  Defendant's briefing does not succinctly state which of the *Leon* exceptions he asserts.  Based on the Court's review of Defendant's briefing, the arguments and authority asserted implicates the third *Leon* exception in relation to the Vehicle Search Warrant and the first and third in relation to the Residential Search Warrant.

When considering whether an affidavit sufficiently establishes probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Gates,* 462 U.S. at 238–39. "[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (internal quotations omitted). "The magistrate's determination is entitled to deference in [even] marginal cases." *United States v. Thomas*, 7 F. Supp. 2d 836, 842 (W.D. Tex. 1997) (quoting *United States v. Fooladi,* 703 F.2d 180, 184 (5th Cir. 1983), *cert. denied,* 470 U.S. 1006 (1985)). "[P]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *United States v. Alberty*, No. 3:14-CR-7-L, 2014 WL 2159259, at *5 (N.D. Tex. May 23, 2014) (quoting *Sokolow,* 490 U.S. at 8; *Gates,* 462 U.S. at 238). "Probable cause exists when 'the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been (or is being) committed.'" *Id.* (quoting *United States v. Petty*, 601 F.2d 883, 890 (5th Cir. 1979)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates,* 462 U.S. at 244 n. 13. "Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location. It is a flexible, non-demanding standard." *State v. Cuong Phu Le*, 463 S.W.3d 872, 878 (Tex. Crim. App. 2015), *reh'g denied* (July 29, 2015), *cert. denied,* 136 S.Ct. 819 (2016) (citing *State v. McLain,* 337 S.W.3d 268, 272 (Tex. Crim. App. 2011)). "Probable cause is a 'fluid concept' that depends on the specific factual context of any given case." *Thomas*, 7 F. Supp. 2d at 842 (citing *Gates,* 462 U.S. at 232).

## II.    THE VEHICLE SEARCH WARRANT

The Court first considers Defendant's arguments that the good-faith exception should not apply herein based on the third of the *Leon* exceptions described above.[10]  Defendant's briefing specifically asserts that "[t]he good faith exception to the probable cause requirement cannot be applied here" because [t]he exception is not available to an officer who relies on a warrant based on an affidavit so lacking in probable cause as to render belief in its existence entirely unreasonable" [Dkt. 63 at 8].  When deciding whether "an officer [relied] on a warrant based on an affidavit so lacking in probable cause as to render belief in its existence entirely unreasonable," courts consider whether the affidavit constituted a bare bones affidavit.  *United States v. Shaw*, 252 F.3d 1356 (5th Cir. 2001); *United States v. Munoz*, No. 4:13-CR-5, 2013 WL 5800582, at *7 (E.D. Tex. Oct. 28, 2013).  Where a warrant is supported by more than a bare bones affidavit, an officer may rely in good faith on the warrant's validity.  *United States v. Hall*, No. 1:13-CR-112(1), 2014 WL 12646032, at *3 (E.D. Tex. May 1, 2014), *report and recommendation adopted*, No. 1:13-CR-112(1), 2014 WL 12647763 (E.D. Tex. June 3, 2014), *aff'd*, 654 F. App'x 653 (5th Cir. 2016).  "A 'bare bones' affidavit is defined as one that contains 'wholly conclusory statements, [lacking] the facts and circumstances from which a magistrate can independently

---

[10] Defendant also argues that "the magistrate signing the warrants had no basis to support a finding of probable cause to believe that fruits of a crime would be found on any item seized, except on an iPhone identified as being in the possession of Defendant [] during the pretext traffic stop . . . described in the [Vehicle Search Warrant]" [Dkt. 63 at 7]. To the extent Defendant intends by this statement to argue that the issuing magistrate wholly abandoned her judicial role, this argument is unsupported by the record.  "A search warrant must be reviewed by 'a neutral and detached magistrate' before it can be executed." *United States v. Dodd*, 349 F. Supp. 2d 1039, 1049 (W.D. Tex. 2004) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 450(1971).  "'The courts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police' in determining whether a warrant contains sufficient probable cause." *Id.* at 1050 (quoting *Leon*, 468 U.S. at 914).  "A judge can be said to act as a mere 'rubber stamp' if [s]he solely relies upon the fact that police officers are asking for the warrant." *Id.*  "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Id.* (quoting *Shadwick v. City of Tampa*, 407 U.S. 345, 350, (1972)).  There is nothing in the record to indicate that the issuing magistrate wholly abandoned her judicial role; the record does not show that the issuing magistrate "failed to read the [Vehicle or Residential Affidavits] or that [s]he issued the [Vehicle Search Warrant or the Residential Search Warrant] solely relying on the fact that [Agent Covey] asked for [them]." *See id.*

determine probable cause.'" *Hall*, 2014 WL 12646032, at *3 (citing *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)); *see also United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) ("[E]xamples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises.") (alterations in original)(citations omitted).  Within the twenty-seven pages of the Vehicle Affidavit, Agent Covey thoroughly detailed the creation of the Craigslist advertisement, communication with Defendant (wherein Defendant repeatedly states his interest in having sex with children and his specific interest in certain sexual acts with Carley), Defendant's photograph of the nude child, other children in public (of whom Defendant communicated his sexual interest) and video of himself masturbating while saying Carley's name, Defendant's attempt to meet up with Agent Covey and Carley at the restaurant, the subsequent traffic stop, (wherein the officer observed stuffed animals in his vehicle and his iPhone receiving messages from Agent Covey), and communication excerpts wherein Defendant stated his intention to bring condoms, a camera, thumb drives and/or hard drives, and a present for Carley [Dkt. 59, Ex. 2].  The Vehicle Affidavit is not a bare bones affidavit that contains wholly conclusory statements from which the issuing magistrate could not determine probable cause.  Accordingly, agents acted in good faith in executing the Vehicle Search Warrant. *See United States v. Lozano*, 435 F. App'x 399, 400 (5th Cir. 2011) (the Fifth Circuit found that where the allegedly bare bones affidavit "provided detailed information from which a determination of probable cause could be made, the district court did not err in concluding that the good-faith exception to the exclusionary rule applied.").

Moreover, Defendant's arguments that the Vehicle Search Warrant "had no basis to support a finding of probable cause to believe fruits of crime would be found in any item seized, except on [Defendant's] iPhone"[11] are unsupported by or take too narrow a view of the record and the law.

Defendant's contention that the Vehicle Search Warrant lacked probable cause because the only means of communication that Agent Covey had with Defendant prior to his arrest was through the Kik messenger application (which Defendant contends is only available on cell phones) has no basis in the evidence before the Court. Agent Covey specifically testified that based on his extensive experience with the Kik messenger application, it is not only a cellular phone application, but instead, can be used on multiple devices at any given time, including, but not limited to, a tablet or computer [Dkt. 65 at 18]. At the time of applying for and executing the Vehicle Search Warrant, Agent Covey could not have known whether Defendant solely used his cell phone to communicate via the Kik messenger or used some other digital device, and/or where Defendant stored their communications or the images/videos described in the warrant, such as the videos of him masturbating while calling out Carley's name.

And, insofar as Defendant argues that law enforcement lacked probable cause to search for evidence of child pornography on any digital devices, as the warrant itself only identified the crime of attempted coercion and enticement of a minor, such argument also fails. *See United States v. Farlow*, 681 F.3d 15, 18–19 (1st Cir. 2012) ("Most notably, [the defendant] could have saved transcripts or screenshots of his sexual-solicitation chats with [undercover agent], and these could have been stored on any form of digital media—CDs, DVDs, flash drives,

---

[11] Defendant also seeks to suppress the children's panties, but failed to offer any substantive arguments in Hearing or in his brief to support suppression of such item. In an abundance of caution, the Court considers and subsequently finds that the good faith exception applies to the search and seizure of the panties in this case. *Barrett v. State*, 367 S.W.3d 919, 924–25 (Tex. App.—Amarillo, 2012) (underwear was appropriately seized as incriminating evidence where the defendant had communicated his sexual interest in minors, specifically his interest in a particular minor's clothing).

disconnected hard drives, and so on. Probable cause therefore supported a warrant authorizing police to search broadly for evidence directly related to [the defendant's] [enticement] crimes, and the warrant here did just that. For essentially the same reason—the likelihood that police would find evidence in different forms and on different devices, all explicitly listed in the warrant—the warrant was particular enough to pass constitutional muster."). Agent Covey averred at Hearing, the thumb drives and laptop are one of the many tools equipped for communication through the Kik messenger application, that Defendant was anticipating receiving images of child pornography at the meet, and also that these digital devices potentially contained the videos and photographs previously provided by Defendant which were evidence of coercion and enticement. Nothing in the record supports Defendant's contention that Agent Covey utilized the Vehicle Search Warrant to improperly search for evidence of child pornography. Rather, taken together, all of the recounted instances in the Vehicle Affidavit establish the flexible, non-demanding standard that there is fair probability that contraband or evidence of Defendant's attempted enticement of a child would be found on his person and in Defendant's vehicle. *United States v. Walling*, No. 1:16-CR-250, 2017 WL 1313898, at *2 (W.D. Mich. Apr. 10, 2017) (court found "ample probable cause existed to search the residence for evidence of 'coercion and enticement of a minor'" and seize the defendant's cell phone where the supporting affidavit detailed the defendant's sexually graphic conversations wherein he discussed having sex with a fourteen-year-old girl and sent a picture of his penis); *United States v. Senke,* No. 3:16-CR-373, 2017 WL 4012659, at *3 (M.D. Pa. Sept. 12, 2017) (the court found probable cause to search and seize items, including the defendant's laptop, from within the defendant's vehicle where the affidavit detailed instances where the undercover officer told the defendant, via text message and email, "several times that his age was fourteen,

but the defendant nonetheless repeatedly asked for nude photographs and agreed to meet with him . . . for sexual activities.").

The Government maintains that "Defendant's argument that the search improperly allowed Agents to search for evidence of child pornography" is also "an argument about particularity" [Dkt. 50 at 11]. To the extent Defendant's arguments in favor of suppression are intended to argue that the Vehicle Search Warrant lacked particularity, the Court notes that general warrants—those that permit "a general, exploratory rummaging of a person's belongings"—"are prohibited by the Fourth Amendment." *Andresen v. Maryland*, 427 U.S. 463, 479 (1976). The Fourth Amendment instead requires "particular" warrants: a warrant that "'would permit an executing officer to reasonably know what items are to be seized.'" *United States v. Layne*, 43 F.3d 127, 132-33 (5th Cir. 1995) (quoting *United States v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992)). Warrants are sufficiently particular where "the executing officer is left with no discretion to decide what may be seized." *United States v. Allen*, 625 F.3d 830, 834–35 (5th Cir. 2010) (citation and internal quotations omitted). Courts look to the warrant's language to determine whether the warrant gave the executing officers discretion in determining what places should be searched or what items should be seized. *See Williams*, 806 F.2d at 598. But "[t]he law permits an affidavit incorporated by reference to amplify particularity, notwithstanding that, by its terms, the Fourth Amendment 'requires particularity in the warrant, not in the supporting documents.'" *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) (quoting *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004)). Further, even "generic language is permissible if it particularizes the type of items to be seized." *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995). Courts have found warrants to be general only in limited circumstances, such as where the warrants "merely repeated the language of the statute[,]" *Marcus v. Search Warrants of Prop. at 104 E. Tenth St., Kansas City*, 367 U.S.

717, 731-32 (1961), completely omitted any affidavit or application and provided a vague description only of the place to be searched, *Groh*, 540 U.S. at 558, and authorized search and seizure of the instrumentalities or evidence of a crime, *Allen*, 625 F.3d at 839.

Here, the Vehicle Search Warrant itself authorizes the search of Defendant's vehicle, a black 2009 Chevrolet HHR, with license plate number CCW2731, and expressly incorporates attachments and an affidavit, namely Attachments A and B and Agent Covey's Affidavit. Attachment A identifies the "location to be searched" by describing "a black 2009 Chevrolet HHR" registered to Defendant at Defendant's address [Dkt. 59, Ex. 1, Attachment A]. Attachment B identifies the "items to be seized and searched," listing seven distinct items associated with "attempted coercion or enticement of a child," such as "[i]tems brought as presents for or intended to be used by a child, including but not limited to toys, stuffed animals, children's clothes, games;" "[i]tems indicative of sexual activity, including condoms;" "[a]ny cameras, film, videotape, and all photographic devices capable of being used to capture and store images;" "electronic devices . . . that may be, or are used to communicate with or about the sexual exploitation of children;" "[a]ny and all notes, documents, records, computer files or correspondence, in any format and medium  . . . pertaining to the enticement, coercion, or sexual exploitation of minors;" and records establishing the ownership of the vehicle [Dkt. 59, Ex. 1, Attachment B].  Agent Covey's Affidavit provides additional details about his experience and background in the use of computers, cell phones, and other digital media in the exploitation of children and the search methodology he sought to employ in executing the Vehicle Search Warrant, like "searching for and attempting to recover any deleted, hidden, or encrypted data . . . .[surveying] various file directories . . . .[o]pening files in order to determine their contents" [Dkt. 59, Ex. 2].

Accordingly, the Court concludes that the Vehicle Search Warrant is not a general warrant that impermissibly allowed officers to search for evidence of child pornography; when considered alongside Attachments A and B and Agent Covey's Affidavit, the Vehicle Search Warrant sufficiently particularizes the place to be searched (Defendant's 2009 black HHR) and the items to be seized (the seven items identified in Attachment B related to the attempted coercion or enticement of a child). *See, e.g.*, *United States v. Marvin*, No. MO-12-CR-229, 2013 WL 12099042, at *4–5 (W.D. Tex. Aug. 14, 2013), *aff'd,* 575 F. App'x 255 (5th Cir. 2014) (the court found the warrant sufficiently particular where "[t]he place of the search [was] clearly limited to [the defendant's] apartment. The scope of the search [was] clearly limited areas where drugs, alcohol, video and computer equipment, and biological material (such as semen) could be located . . . .[and] also permit[ted] a search of the contents of any electronic media, explicitly authorizing officers 'to search within seized computer and video equipment and video storage devices.'").

## III.    SEARCH OF THE SEIZED PNY THUMB DRIVE

Defendant also asserts that even if the seizure of the digital devices was proper, Agent Covey was not granted permission to search the contents of the seized thumb drives, including specifically the PNY Thumb Drive, pursuant to the Vehicle Search Warrant. At the outset, the Court notes that the Vehicle Search Warrant expressly contemplates a forensic search of any digital devices seized, which would necessarily include the PNY Thumb Drive, and articulated the search methodology to be used; namely, that the officers were allowed to search within such devices to find evidence of Defendant's alleged attempted enticement of a child [Dkt. 59, Exs. 1–2]. Moreover, in *United States v. Aleman*, the Fifth Circuit recently considered and rejected similar arguments to those asserted by Defendant herein, where law enforcement's

search of the defendant's electronic devices pursuant to allegations of sexual exploitation of a minor showed evidence of child pornography. 675 F. App'x 441, 442–43 (5th Cir. Jan. 12, 2017). In *Aleman*, the Fifth Circuit found the defendant's argument "that the warrant was insufficiently particular because it authorized only a seizure of the digital items found in his home but not a forensic search of those items [was] unavailing" because a reasonable officer could have understood the warrant to permit a review of the contents of Defendant's electronic media, and therefore, the good faith exception applied. The Fifth Circuit reasoned that this was due to the crime at issue (sexual exploitation of a minor), the type of evidence needed to prove that crime, and the description in the warrant of the property being sought (i.e., devices capable of storing electronic data and the materials necessary to access and to view that data) which supported that the objective of the warrant was to review the electronic media.[12]

The instant case is similar to *Aleman*. The Vehicle Search Warrant, as discussed above, permitted the officers to seize Defendant's laptop and thumb drives because they were to be used in furtherance of Defendant's alleged attempted exploitation of a minor, and/or potentially contained and/or stored, videos, images, and communications which constituted evidence of his alleged attempted exploitation of a minor. A reasonable agent would have understood the Vehicle Search Warrant to permit a review of the contents of Defendant's electronic media. Accordingly, the officers were authorized by the Vehicle Search Warrant to search the contents of the digital devices. *See United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) ("a second warrant to search a properly seized computer is not necessary 'where the evidence obtained in the search did not exceed the probable cause articulated in the original warrant.'") (quoting *United States v.*

---

[12] The Court notes that in the one-page *Aleman* Search Warrant, the Warrant does not describe any search procedure, as the Vehicle Search Warrant in the current case does. The Aleman Search Warrant only goes so far as to authorize seizure of "any and all passwords found at the location that may allow access to any of the [digital] devices and equipment" *Aleman*, 675 F. App'x 441; [2:15-CR-425, Dkt. 13-1].

*Richards*, 659 F.3d 527, 539 n. 10 (6th Cir. 2011)); *see also United States v. Gregoire,* 638 F.3d 962, 967–68 (8th Cir. 2011) (same); *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006) (same); *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) (same); *United States v. Simpson,* 152 F.3d 1241, 1248 (10th Cir. 1998) (same).[13]

## IV.   THE RESIDENTIAL SEARCH WARRANT

Defendant further argues that at the time of the Residential Affidavit, Agent Covey "did not have any evidence rising to probable cause that he would find, in a search of the home, evidence of a child pornography crime or any crime involving a computer or other electronic media storage device." Defendant specifically argues that the Affidavit for the Residential Search Warrant was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable because there was no evidence of illegal activity at the residence and also that Agent Covey incorrectly claimed that the videos involving the two females depicted child pornography, resulting in the issuing magistrate being misled. At Hearing, Defendant also argued in connection with both warrants[14] that the images (of the nude child on the beach and the two females referenced above) constitute merely child erotica (not pornography) and thus provide insufficient information to conclude that child pornography would be present at the residence.

A warrant is valid if, given the totality of the circumstances, there is a "fair probability that . . . evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. An affidavit supporting a search warrant for child pornography does not need to show "specific, individualized information that a defendant possesses child pornography." *United States v.*

---

[13] Moreover, Agent Covey was not required to disregard suspected child pornography once found. *See United States v. Spencer*, 979 F.2d 1533, 1535 (5th Cir. 1992) ("the officers could seize the evidence of another crime they discovered in the execution of the valid search and arrest warrants"); *see also Farlow*, 681 F.3d at 18 (court refused to suppress evidence of child pornography discovered in search for evidence of enticement of a minor).

[14] Again, the Court notes that the Vehicle Search Warrant did not seek evidence of any alleged crime of child pornography.

*Flanders*, 468 F.3d 269, 271 n. 3 (5th Cir. 2006) (citing *United States v. Froman*, 355 F.3d 882, 890-91 (5th Cir. 2004)); *see also United States v. Gove*, 452 F. App'x 555, 556 (5th Cir. 2011) (same). Furthermore, even if the images obtained do not contain depictions constituting child pornography as Defendant argues, but instead constitute child erotica,[15] the presence of child erotica is still a factor that courts consider in finding a substantial basis for probable cause to suspect a child pornography offense has been committed. *Id.* (citing *Rochelle*, 205 F. App'x at 297); *see also United States v. Hansel*, 524 F.3d 841, 845-46 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 520 (2008) (photographs described by the investigating officer as "child erotica, not child pornography" could be considered along with other factors in finding probable cause to search for child pornography); *United States v. Ranke*, 2010 WL 4386917, *6 (No. 08-20598-BC, E.D. Mich. October 29, 2010), *aff'd on other grounds*, 480 F. App'x 798 (6th Cir. 2012) ("The government contends persuasively that 'child erotica' . . . is some evidence that may properly be considered in establishing probable cause to search for child pornography.").

Consider in *United States v. Sustaita*, the court rejected Defendant's argument that "there was no material that met the federal definition of child pornography," and therefore, the search warrant affidavit provided "insufficient information . . . to conclude that there is a substantial basis for concluding that there would be illegal child pornography at the residence of a person who has shown interest in legal child erotica online." No. CR H-17-0065, 2017 WL 4685160, at *4 (S.D. Tex. Oct. 17, 2017). The *Sustaita* court noted:

> in *United States v. Rochelle*, 205 F. App'x 296 (5th Cir. 2006) (per curiam), the Fifth Circuit rejected the argument that the defendant makes here. In *Rochelle* the Fifth Circuit held that the officer executing a search warrant for child pornography based on an affidavit stating that the defendant had received images of "child erotica"—in apparent acknowledgment that the images were not child pornography—was entitled to rely in good faith on the validity of the warrant. Like

---

[15] The Government does not concede that the videos depicted merely child erotica; instead, the Government argues that Agent Covey accurately described the images as child pornography [Dkt. 65 at 85-86].

the defendant in this case, the defendant in *Rochelle* argued that the images described in the affidavit were "mere erotica and, as such, did not suggest a fair probability that he was also in possession of child pornography." Acknowledging that "[a]n officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a bare bones affidavit," the Fifth Circuit rejected the defendant's argument and held that "[t]he search warrant affidavit here was not bare bones," and that the defendant's argument "does not convince us that the lack of probable cause was so obvious as to 'render official belief in its existence entirely unreasonable.'"

*Id.* The *Sustaita* court rejected the defendant's argument, instead finding that because "[t]he affidavit at issue here did not rely only on observations that the defendant possessed child erotica,"[16] it did not constitute a "bare bones" affidavit so lacking in indicia of probable cause as to render belief in it entirely unreasonable. *Id.* at \*5. Here too, as in *Sustaita,* the Residential Affidavit did not solely rest on Defendant's possession of child erotica.

In addition to the statements that Defendant possessed the images of the two females and the nude child on the beach, Agent Covey's Residential Affidavit also indicated that the subject premises to be searched was Defendant's residence, and that there was probable cause to believe that the residence would contain evidence of child pornography and attempted child exploitation: such as a rubber torso depicted in Defendant's videos, the cameras used to take such videos, and Defendant's Macbook laptop that was previously connected to the PNY thumb drive containing the supposed child pornography videos. The Affidavit also detailed Defendant's conversations with Agent Covey wherein he indicated his sexual attraction to children (and even noted he was not law enforcement by sending a photograph of a nude child, which Defendant seemingly concedes constitutes at the least, child erotica). Additionally, the Affidavit stated that the PNY

---

[16] In addition to the observations that the defendant possessed child erotica, the *Sustaita* affidavit also contained information that someone using the IP address at the defendant's residence demonstrated a sexual attraction to children by viewing images of child erotica online, making approving comments about images of child erotica, posting images of child erotica, and offering to trade such images; all of which demonstrated that "the affidavit contained facts on which an officer executing the search warrant could reasonably rely to conclude that the warrant was valid and not lacking probable cause to search the defendant's residence for evidence of child pornography." *Sustaita*, 2017 WL 4685160, at \*5.

thumb drive (containing the videos of the two girls in the bathroom and Defendant masturbating and having sex) was previously connected to a Macbook, which Defendant's wife noted was Defendant's sole computer in the residence.  Further, the Affidavit confirmed that the images (of the bedroom and bathroom) referenced in the warrants matched images found online on different real estate websites featuring the inside of the residence.  An affidavit is not so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable thereby foreclosing the good faith exception where the affidavit "provide[s] detailed information from which a determination of probable cause could be made." *Lozano*, 435 F. App'x at 400.  Because the Affidavit provides "detailed information from which a determination of probable cause could be made," the Affidavit here is far from bare bones.  *Sustaita,* 2017 WL 4685160, at *4–5; *see also United States v. Robinson*, 741 F.3d 588, 596 (5th Cir. 2014) (videos depicting defendant's son and evidence (such as clothing, bedding, and household items) suggested that the videos were filmed in a house and thus, bolstered probable cause to search the defendant's residence for child pornography).  Accordingly, the Court concludes that the Affidavit contained sufficient facts on which an officer executing the warrant could reasonably rely to conclude the warrant was valid and not lacking in probable cause to search the Defendant's residence for evidence of child pornography.[17]

---

[17] The Court further finds that Defendant's argument that the Residential Search Warrant fails because there was no evidence of illegal activity at the residence is unfounded in the record.  Defendant provides no authority for his position that a search warrant requires "illegal activity" at the premises or his repeated assertion that all of Defendant's acts were committed in his vehicle.  As the Government notes, "the Residential [Search] Warrant set forth probable cause to believe that evidence, contraband, fruits, instrumentalities, and property used in committing a crime would be found at the home" [Dkt. 50 at 14].  The Residential Search Warrant connects Defendant's residence with evidence of Defendant's alleged possession of child pornography: specifically, Agent Covey attested in the Affidavit that the video of Defendant masturbating and saying Carley's name and Defendant's videos of the two females were taken and sent from the residence (as confirmed by Agent Covey's online research of the residence on several real estate websites) and the PNY thumb drive containing the alleged videos depicting child pornography was previously connected to a Macbook, which was identified as Defendant's home computer [Dkt. 59, Ex. 4 at 62, 65-69].

Defendant's argument that the females depicted were ultimately determined not to be minors does not change this result or preclude the application of the good faith exception (or defeat probable cause). The Affidavit provided, in significant detail, the content of the videos and the reasons for Agent Covey's belief that based on information in the investigation (the age of Defendant's relative and the video time stamps) and his extensive background investigating child pornography (which includes viewing nude females of various ethnicities and ages), the videos depicted child pornography. The Court finds that Agent Covey provided sufficient understanding to the issuing magistrate as to why he believed the videos to involve children: namely, the time stamp on the videos, the information regarding Defendant's relative's birthdate, and his extensive experience in viewing, studying, and investigating child pornography (including Asian minor females like the female depicted in the videos). *See e.g. United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008) ("First, estimating the age of persons is not an area that requires any special expertise. Second, the affidavit describes these images in sufficient detail to give the reader an understanding of why the officer placed certain individuals within a particular age range . . . .A detailed verbal description is sufficient.").

Further, insofar as Defendant argues that the Residential Search Warrant contained reckless or intentional misrepresentations, Defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Defendant seemingly asserts both that (1) Agent Covey misrepresented the nature of the videos to the issuing magistrate: arguing that these videos depicted child erotica, but not child pornography as Agent Covey averred, and (2) that Agent Covey misrepresented the ages of the girls in the videos by describing them as minors, and should have

investigated their ages further prior to applying for the warrant. Defendant has failed to meet his burden as to either of these assertions.

"The good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth." *Sustaita*, 2017 WL 4685160, at *7 (quoting *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 253 (2002) (citing *Franks v. Delaware*, 98 S. Ct. 2674, 2676 (1978)). In *Franks*, the Supreme Court held that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

98 S. Ct. at 2676. The initial burden is upon the defendant to prove that false information was given or omitted intentionally or recklessly. *Sustaita*, 2017 WL 4685160, at *7 (citing *Cavazos*, 288 F.3d at 710). "If the defendant fails to meet his burden, or if the affidavit would have sufficiently provided probable cause without the false information, the warrant did not violate the Fourth Amendment and the evidence should not have been excluded." *Id.* There is no evidence in the record that Agent Covey knowingly or with a reckless disregard for the truth made a false statement to the issuing magistrate. Agent Covey testified that he was unaware that the individuals depicted in the videos were not minors (and that the time stamps on the videos were inaccurate) until the Residential Search Warrant was already being and/or had been executed and items were being seized from the residence [Dkt. 65 at 38-39, 65, 71-72]. The Court concludes that any information included in the Affidavit that proved to be false or incorrect was not the result of any

intentional misstatement or reckless disregard for the truth. Accordingly, the Court concludes that Defendant has failed to carry his initial burden of establishing that Agent Covey conveyed false information or omitted material information intentionally or recklessly. *United States v. Symmank*, 397 F. App'x 991, 994 (5th Cir. 2010).

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends Defendant William Craig Whisman's Motion to Suppress Evidence [Dkt. 40] be **DENIED**.

As the Parties agreed, within ten days after entry of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge [Dkt. 65 at 9]. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 5th day of January, 2018.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE